UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
-------------------------------------------------------x
TODD AKINS                                       :
     et al.,                                     :
                              Plaintiffs,        :
                                                 :
              -against-                          :        Case No. 2017-cv-00675(BAH)
                                                 :
ISLAMIC REPUBLIC OF IRAN,  et al.    :
                                                 :
                              Defendants.    :
-------------------------------------------------------x
```

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF ENTRY OF FINAL JUDGMENT AWARDING DAMAGES

Plaintiffs respectfully submit this Memorandum in Support of their Motion for Entry of Final Judgment and Damages.  Plaintiffs incorporate by reference their prior Motion To Take Judicial Notice of Evidence in Related Prior Cases and For Entry of Default Judgment as to Liability and For Appointment of a Special Master, and their Memorandum in Support thereof (ECF #22)[1], and attach hereto their individual Declarations describing the impact of the terrorist attack on them.  All plaintiffs herein survived the attack, which killed 19 of their fellow servicemen.  Some of those present at the Khobar Towers suffered severe physical injuries and some suffered more superficial physical wounds.  However, all those who were housed there suffered substantial pain and suffering and emotional distress both at the time of the attack and in the years afterward.  There are annual memorials commemorating their fallen comrades which many attend; there is a facebook Khobar Towers survivors' group to which almost all belong.

Plaintiffs can be divided into two main groups:  those who served in the Air Force and

---

[1] The Portion of that Motion Seeking Appointment of a Special Master has been mooted by this Court's Minute Order of June 15, 2018, and Plaintiffs' response thereto (ECF #24).

were housed at the Khobar Towers residential complex, and those who were family members who learned of the attack on June 25, 1996, usually through phone calls or television or radio news reports, and who observed the changes in their loved ones after they returned to the United States. Plaintiffs who are family members are parents, children, and siblings of those who were at the Khobar Towers. Numerous decisions in this court have held that such close family members who were United States nationals may receive damages for their pain and suffering, and the intentional infliction of distress upon them, under Section 1605A of the Foreign Sovereign Immunities Act. Plaintiffs who were serving at the Khobar Towers have causes of action under Section 1605A of the FSIA for assault and battery and intentional infliction of emotional distress; family members have causes of action under that provision for "solatium" or intentional infliction of emotional distress. Id.

Plaintiffs set out below, in summary form, the applicable principles they believe should guide the Court's determination of damages.

## I.    The *Heiser* Damages Framework Provides A Useful Guide, Promotes Consistency, and Should Be Used.

In *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 at 403 (D.D.C. 2015), the court recognized the development of "a standardized approach for evaluating IIED claims … for damages in *Estate of Heiser,* where it surveyed past awards to family members of victims of terrorism to determine that, based on averages, '[s]pouses typically receive greater damage awards than parents, who, in turn, typically receive greater awards than siblings.' *Estate of Heiser,* 466 F.Supp.2d at 269." While noting that the "Heiser Framework" awards were not "set in stone," they continue to serve as a "baseline," and many cases in this Court have followed this approach. See e.g., *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64 at 85 (D.D.C. 2017).

2

A.  Factors Affecting Plaintiffs Who Were at the Khobar Towers

"Courts may look to expert testimony and prior awards for comparable injury" to determine appropriate compensatory damages. *Braun v. Islamic Republic of Iran*,  Id. at 82, citing *Reed  v. Islamic Republic of Iran*, 845 F. Supp. 204, 214 (D.D.C. 2012).  In making such awards, courts have looked at such factors as the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim of the rest of his life.  *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23,48 (D.D.C. 2012).  "In awarding pain and suffering damages, the Court must take pains to ensure that individuals with similar injuries receive similar awards."  Id., quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp 2d. 52 at 84 (D.D.C. 2010).

In *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 51 (D.D.C. 2007), "the Court granted a baseline award of $5 million to individuals suffering such physical injuries as compound fractures, severe flesh wounds, and wounds and scars from shrapnel, as well as 'lasting and severe psychological pain.'" *Valore,* 700 F. Supp. 2d at 84 (quoting *Peterson*, 515 F. Supp. 2d at 54). "The [*Peterson*] Court was willing to depart upward from this baseline to $7.5-$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, partially lost vision and hearing, or were mistaken for dead . . . ." Id. quoting *Peterson*, 515 F. Supp. 2d at 54. "Similarly, the Court [in *Peterson*] was willing to depart downward to $2-$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire." Id., citing *Peterson,* 515 F. Supp. 2d at 54.

Many of the injured servicemen who are plaintiffs here suffered substantial injury, although most of them minimized their physical injuries in their Declarations.  Often they say

3

that there were many other buddies of theirs who were hurt worse than they were, and therefore they don't consider their own injuries as serious.  However, even the ones who suffered only minor cuts or abrasions were impacted by the blast wave from the bomb, and were always thrown across the room, or up and out of bed, or, in one instance, many feet across a parking lot.  Many plaintiffs had severe cuts and shrapnel wounds from glass that became embedded in their bodies, but for which some of them sought and received minimal medical treatment.  Others suffered lasting damage to their backs, shoulders and necks because of the impact of being propelled by the blast wave against a hard wall or other immovable object.  Many spoke of loss of vision or narrowing of vision and loss or diminution of hearing upon impact.  Some of the worst injuries included traumatic brain injury.

Virtually all of these plaintiffs suffered substantial psychological impacts for many years afterwards and continue to do so to this day.  Many have sought and received psychological help and counseling.  Many have been formally diagnosed with PTSD and received disability ratings from the Veterans Administration.  Some others have chosen to avoid seeking formal support for personal reasons.  But all of them still struggle to this day, each in his own way, with what happened to them and to their close friends on June 25, 1996.  The sounds and sights of that day will always be with them.  The memory of their fallen brothers in arms who never returned will always haunt them.

B.  <u>Factors Affecting Plaintiffs Who Are Family Members</u>

In *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 213-14 (D.D.C. 2012), the court described the difficulty in assessing damages for the emotional distress, pain and suffering of family members of those who survived a terrorist attack.  However, the court recognized that there is merit in consistency, and that the court "does not write on a blank slate." Id. at 213.

"[S]everal other members of this court have faced this daunting task, and their efforts have established a framework to assist in the adjudication of these and similar claims."  Id., citing *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 271-359 (D.D.C. 2006).  The court continued:

> Under the *Heiser* framework, a spouse, child, or sibling may receive $4 million, $2.5 million and $1.25 million, respectively, for valid claims in which the family member survived the terrorist act. *Id.* The framework has gained strong precedential support as other members of this court have repeatedly continued to follow it in FSIA cases. *See, e.g., Brewer v. Islamic Republic of Iran,* 664 F.Supp.2d 43, 57–58 (D.D.C.2009); *Heiser II,* 659 F.Supp.2d at 27 n. 4; *Anderson v. Islamic Republic of Iran,* 90 F.Supp.2d 107, 113 (D.D.C.2000); *Eisenfeld,* 172 F.Supp.2d at 10–11; *Flatow v. Islamic Republic of Iran,* 999 F.Supp. 1, 29–32 (D.D.C.1998).

The *Reed* court further explained the virtues of this kind of consistency:

> Because the court is cognizant of the fact that it must "take pains to ensure that individuals with similar injuries receive similar awards," *Peterson v. Islamic Republic of Iran,* 515 F.Supp.2d 25, 54 (D.D.C.2007), the court elects to adopt the *Heiser* framework.

Plaintiffs suggest that there is no reason to depart from the *Heiser* framework here.

All Plaintiffs who were family members suffered immense emotional pain and distress, first, when they learned of the attack, and later when they noticed the changes in their loved ones and how those changes led their returned family members to disengage from them and to become moody, anxious, depressed and/or emotionally withdrawn.  Although the degree to which the family members noted these symptoms varied, all agreed that their loved one who returned was not the same as their loved one who had served in Saudi Arabia.

## II.  The Court Should Award Pre-Judgment Interest.

There is precedent in this court for awarding prejudgment interest on the compensatory damage awards.  E.g., *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012).  "[C]ourts in this Circuit have awarded prejudgment interest in cases where plaintiffs were

5

delayed in recovering compensation for their injuries—including, specifically, where such injuries were the result of targeted attacks perpetrated by foreign defendants."  Id., citing *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263 (D.D.C. 2008).  "Because of the nature of the plaintiff's loss and the considerable delay that is necessary to secure judgment, the court concludes that prejudgment interest is appropriate in this case."  Id. at 214-215.  See also *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252 at 261 (D.D.C. 2014);  *Estate of Doe v. Islamic Republic of Iran*,  943 F. Supp. 2d 180 at 184 n.1 (D.D.C. 2013).

The same considerations strongly favor the award of prejudgment interest here as well.

### III.  The Court Should Award Punitive Damages.

Punitive damages have already been awarded against the same defendants present here, Iran and IRGC, for the same terrorist attack in two prior cases, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006), and *Rimkus v. Islamic Republic of Iran*, 750 F. Supp.2d 163 (D.D.C. 2010).

Where punitive damages have already been awarded for a particular terrorist attack, "the Court has previously recognized that "'[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect ... creating anomalous results.'" *Rimkus,* 750 F. Supp. 2d at 184.  "At the same time, this Court cannot simply ignore the brutal actions of defendants in planning, supporting and aiding the execution of this horrific attack. The bombing of the Khobar Towers complex was a deliberate strike at U.S. personnel designed to inflict maximum damage and massive fatalities." *Rimkus,* 750 F. Supp. 2d at 184-185.

The *Rimkus* court applied a formula for assessing new punitive damages to balance these competing concerns.  It looked at the ratio of compensatory to punitive damages awarded

previously in the *Heiser* case, and determined that ratio, rounded to the nearest cent, was $1.03 in punitive damages awarded for every dollar of compensatory damages.  Id. at 185.  Accordingly, the *Rimkus* court awarded an amount of punitive damages in the same ratio.  Plaintiffs here suggest that a similar award of punitive damages here would be appropriate and fair.

## **CONCLUSION**

For all the reasons stated herein and in Plaintiffs' prior Motion for Entry of Judgment as to Liability, Plaintiffs are entitled to Entry of Judgment against defendants with damages as determined by the Court.

Respectfully submitted,

/s/__Paul G Gaston_____
Paul G. Gaston, DC Bar #290833
LAW OFFICES PAUL G. GASTON
1901 Pennsylvania Avenue, NW, Suite 607
Washington DC 20006
202-296-5856
paul@gastonlawoffice.com

*Attorney for Plaintiffs*

.