## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TODD AKINS, *et al.*,

        Plaintiffs,

        v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

        Defendants.

Civil Action No. 17-675 (BAH)

Chief Judge Beryl A. Howell

### MEMORANDUM OPINION

On June 25, 1996, a devastating terrorist bomb exploded at the Khobar Towers apartment complex in Dhahran, Saudi Arabia that housed United States military personnel and contractors and resulted in the death of nineteen American service members and injuries to scores of other residents. Compl. at 3 & ¶ 28, ECF No. 1. Fifteen of the injured service members, along with twenty-three of these members' "'immediate family members' and one family member of another service member, who was injured in the attack but was not a plaintiff," sued and obtained a default judgment against defendants, the Islamic Republic of Iran and the Iranian Islamic Revolutionary Guard Corps ("IRGC"), jointly and severally, in the total amount of $104,700,000. *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1, 9 (D.D.C. 2018) (quoting Compl. at 3); *id.* at 46–47. Now, almost a year and a half later, after taking no timely appeal to challenge any part of the judgment entered in their favor, plaintiffs move, under Federal Rule of Civil Procedure 60(b), to modify that default judgment and increase the damages awarded to certain plaintiffs in *Akins* and to add punitive damages and prejudgment interest to all plaintiffs' final awards. Pls.' Mot. Relief Under Rule 60(b) ("Pls.' Mot.") at 1, ECF No. 42. For the reasons detailed below, the motion for relief from judgment is denied.

# I.    BACKGROUND

Prior procedural history in this case as well as new legal developments since the entry of final judgment are summarized below.

## A.    Entry of Default Judgment in *Akins*

On June 25, 1996, fifteen service-member plaintiffs—Todd Akins, George C. Anthony, Charles Blank, John Gaydos, Kevin James Hurst, Thomas R. Lawrence, Gregory Eric Leinenbach, Nicholas L. MacKenzie, Jason Porter Remar, Jerry Timothy Sasser, Jr., Frank David Sills III, Matthew G. Spicer, Alan Jeffrey Wade, Tracy Matthew Winter, and Eric Dale Ziegler—were present and suffered injury from the Khobar Towers sttack in Dhahran, Saudi Arabia. *Akins*, 332 F. Supp. 3d at 13–29; *see also* Pls.' Mot. at 2.  Over twenty years after the attack, in 2017, these service-member plaintiffs and their families sued Iran and the IRGC for damages under the Foreign Sovereign Immunities Act's ("FSIA") terrorism exception, 28 U.S.C. § 1605A, and ultimately moved for a default judgment when defendants failed to respond. *Akins*, 332 F. Supp. 3d at 9.

After finding that defendants were liable for assault on the fifteen service-member plaintiffs, *id.* at 35–37, and for intentional infliction of emotional distress as to the service-member plaintiffs and the 24 family-member plaintiffs, *id.* at 37–38, plaintiffs were granted default judgment, *id.* at 46.[1]  The service-member plaintiffs' awards were calculated based on two key considerations.  First, the calculations relied on the "baseline assumption" that, "when assessing damages for surviving victims of terrorist hostilities," "persons suffering injuries in terrorist attacks are entitled to $5 million in damages."  *Id.* at 40 (quoting *Kaplan v. Hezbollah*,

---

[1]    Plaintiffs' Motions as to Liability and for Default Judgment as to Damages were denied as to an additional sixteenth service-member plaintiff, Christopher Galletto, because he was not present at the Khobar Towers at the time of the attack, *Akins*, 332 F. Supp. 3d at 9 n.1, 36 n.11, 37 n.12, 47, and he does not join this motion, Pls.' Mot. at 2 n.1.

213 F. Supp. 3d 27, 35 (D.D.C. 2016) (quoting *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 12 (D.D.C. 2012))). Second, the calculations were either "moderated . . . upward," *id.* at 40, if the individual service-member plaintiff suffered "severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadriplegic, including partially lost vision and hearing, or were mistaken for dead," or "downward in the face of 'minor shrapnel injuries or minor injury from small-arms fire,'" *id.* (quoting *Kaplan*, 213 F. Supp. 3d at 35–36 (quoting *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 84 (D.D.C. 2010))).[2]

Following close analysis of the sworn affidavits and documentation submitted by plaintiffs, nine service-member plaintiffs—Akins, Anthony, Blank, Gaydos, Leinenbach, Sasser, Sills, Wade, and Ziegler—were each awarded $5,000,000 in pain and suffering damages for "severe physical injuries . . . [and] lasting and severe psychological pain" *id.* at 40–41 (quoting *Khaliq v. Republic of Sudan*, 33 F. Supp. 3d 29, 33 (D.D.C. 2014)); *see id.* at 13–19, 21–25, 27–29, 47; five service-member plaintiffs—Hurst, MacKenzie, Remar, Spicer, and Winter—were each awarded $2,500,000 for "severe emotional injury accompanied by relatively minor physical injuries," *id.* at 41 (quoting *Khaliq*, 33 F. Supp. 3d at 33); *see id.* at 14–15, 19–21, 27, 47; and a single service-member plaintiff, Lawrence, was awarded $1,500,000 for suffering exclusively "severe emotional injury without physical injury" as a result of the attack, *id.* at 41 (citing *Kaplan*, 213 F. Supp. 3d at 36); *see id.* at 25–27, 47. Awards for eight service-member plaintiffs—Akins, Anthony, Gaydos, Leinenbach, Sasser, Sills, Winter and Ziegler—and

---

[2] Plaintiffs additionally moved to appoint a special master to "hear evidence as to the extent of [plaintiffs'] injuries and to determine damages," Pls.' Mem. Supp. Mot. to Take Judicial Notice of Evidence in Related Prior Cases and for Entry of Default J. as to Liab. and for Appointment of a Special Master to Assess Damages ("Pls.' Default Mem.") at 15–16, ECF No. 22-1, which motion was "denied as unnecessary," *Akins*, 332 F. Supp. 3d at 10 n.2.

consequently the awards of their related family-member plaintiffs, were premised on factual representations that included information about the "disability ratings" assigned by the Department of Veterans Affairs ("VA") to these plaintiffs based on their injuries. *Id.* at 13–14, 17–19, 21–24, 27. Awards for the remaining seven service-member plaintiffs were also based on the details provided in their associated declarations, but those declarations made no reference to any formal disability rating by the VA. *See id.* at 14–17, 19–21, 25, 27–28 (citing submitted records for service-member plaintiffs Blank, Hurst, MacKenzie, Lawrence, Remar, Spicer and Wade).

Additionally, family-member plaintiffs were awarded solatium damages "to compensate for the emotional distress they experienced as family members of victims of the attacks." *Id.* at 42.[3] Solatium damages were awarded according to a "standardized . . . *Heiser* damages framework," *id.* at 42 (citing *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006)), which awards $4,000,000 to spouses of surviving victims, $2,500,000 to parents of surviving victims, $1,500,000 to children of surviving victims and $1,250,000 to siblings of surviving victims, *id.* at 43–45; *see also Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 39 (D.D.C. 2012) ("[I]n the context of distress resulting from injury to love ones–rather than death–courts have applied a framework where awards are valued at half the awards to

---

[3]     Family-member plaintiffs joining the instant motion are: (1) for service-member plaintiff Charles Blank, Linda Kay Blank, Nathan Blank, Deborah Millrany, and Andrew P. Blank, *Akins* 332 F. Supp. 3d at 15–17; (2) for service-member plaintiff John Gaydos, Barbara Gaydos, Ethan Gaydos, and Elizabeth Gaydos, *id.* at 17–19; (3) for service-member Thomas R. Lawrence, Robyn Elizabeth Lawrence, Kimi Lawrence, Bruce Russell Lawrence, and Andrea Jo Grimson, *id.* at 25–27; (4) for service-member plaintiff Gregory Eric Leinenbach, Joy Leinenbach, *id.* at 23–24; (5) for service-member Jerry Timothy Sasser, Jr., Jerry Timothy Sasser, Sr., Deborah Homs, and the estate of Jason Allen Sasser, *id.* at 21–23; (6) for service-member plaintiff Matthew G. Spicer, Cathy Eunha Kim Spicer-Lindsy, Christian William Spicer, and Christopher G. Spicer, *id.* at 19–21; (7) for service-member plaintiff Alan Jeffrey Wade, Bonnie C. Wade, Thomas H. Wade, and Michael Kevin Wade, *id.* at 27–29; (8) for service-member Tracy Matthew Winter, Angela Rose, *id.* at 27; (9) for service member Kevin S. Williams, who was injured in the Khobar Towers attack but is neither a plaintiff in this motion nor in the original judgment, Richard Williams, *id.* at 29–30; and (10) for service-member plaintiff Eric Dale Ziegler, Nancy Kilfoyle, *id.* at 24–25.

4

family members of the deceased" (internal quotation marks omitted)); *Spencer v. Islamic Republic of Iran*, 71 F. Supp. 3d 23 (D.D.C. 2014) (determining that "[c]hildren of a surviving victim receive $1.5 million on average"). Consistent with that framework, "'proportional[]' downward deviation[s] from the *Heiser* framework" were also applied where "[the] proposed solatium award would exceed the pain and suffering award received by a surviving victim." *Akins*, 332 F. Supp. 3d at 44 (quoting *Spencer*, 71 F. Supp. 3d at 28). Family-member plaintiffs of severely injured service members received the standard compensation afforded by the *Heiser* framework: plaintiff-spouses and ex-spouses Linda Kay Blank, Barbara Gaydos, Joy Leinenbach, and Nancy Kilfoyle, were each awarded $4,000,000, *id.* at 44, 47; plaintiff-parents Jerry Timothy Sasser, Sr., Deborah Homs, Bonnie C. Wade, Thomas H. Wade, and Richard M. Williams were each awarded $2,500,000, *id.* at 44–45, 47; plaintiff-children Nathan Blank, Ethan Gaydos and Elizabeth Gaydos were each awarded $1,500,000, *id.* at 45, 47; and plaintiff-siblings Andrew P. Blank, Deborah Millrany, Michael Kevin Wade and the estate of Jason Allen Sasser were each awarded $1,250,000, *id.* Family-member plaintiffs related to service-members who sustained severe emotional injuries and some physical injuries received awards with slightly less than the standard rates. Specifically, plaintiff-spouses and ex-spouses received eighty percent of the awards granted to their service-member husbands or ex-husbands, resulting in an award to plaintiff ex-spouse Cathy Eunha Kim Spicer-Lindsy of $2,000,000 and to plaintiff-spouse Robyn Elizabeth Lawrence of $1,200,000. *Id.* at 44, 47. Plaintiff-parents received fifty percent of the awards granted to their service-member children, resulting in an award to plaintiff parent Angela Rose of $1,250,000 and to plaintiff parents Kimi Lawrence and Bruce Russell Lawrence of $750,000 each. *Id.* at 45, 47. Plaintiff-children received thirty percent of the amount awarded to their service-member parents, resulting in an award to plaintiff child

Christian William Spicer of $750,000. *Id.* Finally, plaintiff-siblings received twenty-five percent of the amounts awarded to their respective brothers, resulting in an award to plaintiff-sibling Christopher G. Spicer of $625,000 and to plaintiff-sibling Andrea Jo Grimson of $375,000. *Id.*

Plaintiffs' requests for prejudgment interest and punitive damages were denied. *Id.* at 45–47. Recognizing that "whether pre-judgment interest is to be awarded is subject to the discretion of the court and equitable considerations," *id.* at 45 (quoting *Oldham v. Korean Air Lines Co.*, 127 F.3d 43, 54 (D.C. Cir. 1997)), this Court determined that none of the plaintiffs were entitled to prejudgment interest. Adopting then-Chief Judge Lamberth's analysis in *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16 (D.D.C. 2011), *Akins* reasoned that the *Heiser* framework awards "represent the appropriate level of compensation, regardless of the timing of the attack," *Akins*, 332 F. Supp. 3d at 46 (quoting *Oveissi*, 768 F. Supp. 2d at 30 n.12), and that neither family-member plaintiffs nor service-member plaintiffs provided "any reason why awards under [the *Heiser*] framework are insufficient to provide 'complete compensation,'" *id.* (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)); *see also id.* (finding that service-member plaintiffs failed to "suggest that awards under the *Heiser* framework are insufficient such that prejudgment interest necessary" and noting that the *Heiser* framework awards were already designed specifically to compensate for ongoing harm).

Regarding punitive damages, the Court determined that "plaintiffs' request for . . . at least $500 million [was] barred by controlling precedent," *id.* at 45 (internal citation omitted), since the D. C. Circuit had instructed that "the FSIA terrorism exception does not retroactively authorize the imposition of punitive damages against a sovereign for conduct occurring before the [2008] passage of § 1605A," *Owens v. Republic of Sudan*, 864 F.3d 751, 812 (D.C. Cir.

2017); *see also id.* at 818 ("[A] plaintiff proceeding under either state or federal law cannot recover punitive damages for conduct occurring prior to the enactment of § 1605A"); *Akins*, 332 F. Supp. 3d at 45. Given that the Khobar Towers attack occurred in 1996, twelve years prior to the 2008 enactment of § 1605A, plaintiffs were not entitled to punitive damages. *Id.*

As already noted, plaintiffs took no steps to appeal any part of the ruling leading to entry of default judgment in *Akins*, even though plaintiffs' requests for prejudgment interest and punitive damages were denied and they were not granted the full extent of compensatory damages they wanted.

### B. New Developments Since Entry of Default Judgment in *Akins*

Since *Akins* was decided in 2018, changes have occurred in law and precedent relevant to determining damages awards under the FSIA for victims of terrorist attacks. First, in 2020, the Supreme Court held in *Opati v. Republic of Sudan* that, contrary to the D.C. Circuit's instruction in *Owens* that was applied in *Akins*, Congress' 2008 amendments to the FSIA in the National Defense Authorization Act for Fiscal Year 2008 (NDAA), Pub. L. No. 110–181, 122 Stat. 3, authorized plaintiffs suing under § 1605A(c) to seek punitive damages for pre-2008 conduct. 140 S. Ct. 1601, 1608–09 (2020). As relevant here, § 1803(c)(2) of the NDAA, in a provision titled "Prior Actions," instructed that existing lawsuits that had been "'adversely affected on the groun[d] that' prior law 'fail[ed] to create a cause of action against the state' . . . [should be] given effect 'as if' they had been originally filed under § 1605A(c)'s new federal cause of action." *Id.* at 1606 (quoting NDAA § 1083(c)(2)). Put simply, the Supreme Court concluded that § 1083(c) authorizes retroactive application of "all . . . features of § 1605A(c)," including punitive damages. *Id.* at 1609; *see also id.* (concluding that § 1605A(c) "vests the district court with discretion to award" punitive damages retroactively).

Second, since 2018, this Court has issued three decisions, under the FSIA, relevant to awards of compensatory damages and prejudgment interest arising from Khobar Towers terrorist attack that also recognized, as in *Akins*, the probative value of VA disability ratings in objectively differentiating injuries suffered by service members, but relied more heavily on those VA disability ratings to calculate service-member plaintiffs' awards. *See Schooley v. Islamic Republic of Iran,* Civil Action No. 17-1376 (BAH), 2019 U.S. Dist. LEXIS 108011 at *300–06 (D.D.C. Jun. 27, 2019); *Aceto v. Islamic Republic of Iran,* Civil Action No. 19-464 (BAH), 2020 U.S. Dist. LEXIS 22084 (D.D.C. Feb. 7, 2020); *Christie v. Islamic Republic of Iran,* Civil Action No. 19-1289 (BAH), 2020 U.S. Dist. LEXIS 116378 (D.D.C. Jul. 2, 2020). Specifically, using this more "objective metric," *Schooley*, 2019 U.S. Dist. LEXIS 108011 at *301, these three decisions applied the following rubric: service-member plaintiffs "rated by the VA up to 30% disabled . . . receive[d] a baseline award of $5,000,000 each; those plaintiffs rated 40–60% disabled by the VA . . . receive[d] an upward departure, for a total award of $6,000,000 each; and those service[-]member plaintiffs rated 70–100% disabled by the VA . . . receive[d] a further upward departure, for a total of $7,000,000 each," *id.* at *303; *see also Aceto*, 2020 U.S. Dist. LEXIS 22084 at *58; *Christie*, 2020 U.S. Dist. LEXIS 116378 at *74. Additionally, injured service-member plaintiffs without a VA disability rating were "awarded damages based on the descriptive and documentary evidence presented." *Id.* (citing *Schooley*, 2019 U.S. Dist. LEXIS 108011 at *75, *Aceto*, 2020 U.S. Dist. LEXIS 22084 at *18 and *Akins*, 332 F. Supp. 3d at 40–41).

This Court's decision in *Christie* also departed from *Akins* by awarding prejudgment interest on plaintiffs' compensatory damages. Relying on two recent district court cases in which prejudgment interest was awarded in terrorist bombing cases, *Christie* determined that

plaintiffs were entitled to "prejudgment interest at the prime rate," *id.* at *62 (quoting *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 261 (D.D.C. 2014)) (citing *Kinyua v. Republic of Sudan*, Civil Action No. 14-2118 (JDB), 2020 U.S. Dist. LEXIS 87792 at *7 (D.D.C. 2020) and *Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 82 (D.D.C. 2014)), to "'place plaintiffs in the same position they would have been in had they received (and invested) their damages awards in' 1996," *id.* (quoting *Owens*, 71 F. Supp. 3d at 261) (citing *Opati*, 60 F. Supp. 3d at 82), and avoid "plac[ing] plaintiffs at a disadvantage relative to plaintiffs in earlier litigation," *id.* at *62 (citing *Estate of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 184 n.1 (D.D.C. 2013)).[4]

Lastly, plaintiffs point out, as part of their argument that relief is warranted under Federal Rule of Civil Procedure 60(b)(5) because the judgment meets the "prospective" requirement in that subsection of the Rule, that Congress, after *Akins* was decided in 2018, enacted two pieces of legislation extending, through 2039, the United States Victims of State Sponsored Terrorism ("USVSST") program, 34 U.S.C. § 20144(e)(6), which "provide[s] a means for creditors with terrorism judgments against designated state sponsors of terrorism to satisfy the compensatory portion of their judgments," Jennifer K. Elsea, Cong. Research Serv., IF0341, Justice for United States Victims of State Sponsored Terrorism Act: Eligibility and Funding 1 (2021); *see* Justice for United States Victims of State Sponsored Terrorism Act, Pub. L. No. 114-113, § 404(e)(6)(A), 129 Stat. 3015 (scheduling termination of USVSST program for 2026); United States Victims of State Sponsored Terrorism Fund Clarification Act, Pub. L. No. 116-69, § 1701(b)(1)(D), 133 Stat. 1142 (extending program to 2030); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 1705, 134 Stat. 3293 (to be codified at 34 U.S.C. § 20144(e)(6)) (extending program to 2039). According to plaintiffs, the extension of this program is relevant

---

[4]     Plaintiffs in *Schooley* and *Aceto* did not request prejudgment interest and thus the issue of prejudgment interest was not addressed in those decisions.

here because "there plainly will be additional payments made" through the program in the future, and that such future payments give the 2018 judgment in *Akins* a "prospective" element. Pls.' Mot. at 3–4.

Plaintiffs filed the instant motion on January 8, 2021, *see id.* at 1, seeking relief, under either Rule 60(b)(5) or Rule 60(b)(6) of the Federal Rules of Civil Procedure, to "modify and increase the damages they were awarded" in *Akins*, *id.* at 4. Having received no response from defendants, either regarding the original judgment or regarding this motion, the motion is now ripe for review.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows the court, "[o]n motion and just terms," to "relieve a party . . . from final judgment" in certain enumerated situations, FED. R. CIV. P. 60(b), including where "applying [the judgment] prospectively is no longer equitable," *id.* 60(b)(5), and under a catch-all provision authorizing "any other reason that justifies relief," *id.* 60 (b)(6). Motions under Rule 60(b)(5) or 60(b)(6) must be made "within a reasonable time," *id.* 60(c), a determination that requires consideration of the "prejudice to the non-moving party" and the "litigant[s'] diligence in pursuing review of a decision," *Salazar v. District of Columbia*, 633 F.3d 1110, 1118–19 (D.C. Cir. 2011). Considering these guidelines, district courts exercise discretion in determining whether to grant or deny a motion under Rule 60(b), as the trial court "must strike a 'delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of *all* the facts." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (emphasis supplied) (quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980)).

## III.     DISCUSSION

Under Rule 60(b)(5) or 60(b)(6), 22 of the 39 plaintiffs awarded damages in *Akins* now seek an increase in their compensatory damages awards based on the rubric used to calculate such awards in subsequent decisions by this Court, and all plaintiffs seek to add punitive damages and prejudgment interest to their baseline awards. Pls.' Mot. at 1–2. As support for these increases in their awards, plaintiffs argue, first, that they are now entitled to punitive damages in light of the Supreme Court's 2020 ruling in *Opati*. *Id.* at 3. Second, plaintiffs contend that a retroactive increase in compensatory damages awards is warranted because higher damage awards have been granted for similarly situated military personnel injured in the same terrorist attack with disability ratings "identical" to those of plaintiffs in the instant action. *Id.* at 2. Finally, plaintiffs contend that prejudgment interest should be awarded because this Court recently held that an award of prejudgment interest was appropriate in a case similar to *Akins*. *Id.* (citing *Christie*, 2020 U.S. Dist. LEXIS 116378 at *62–63). For the following reasons, plaintiffs are neither entitled to relief under Rule 60(b)(5) nor under Rule 60(b)(6), and thus the motion for relief from judgment is denied.

### A.     Plaintiffs Are Not Entitled to Relief under Rule 60(b)(5)

Rule 60(b)(5) allows a court to amend "any judgment that has prospective effect." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863 (3d ed. 2021). A judgment is "prospective" when it is either "executory" or involves "the supervision of changing conduct or conditions." *Twelve John Does*, 841 F.2d at 1139. The consensus among courts of appeal, including the D.C. Circuit, is that a claim for money damages is not "prospective" for the purposes of Rule 60(b)(5). *Id.* at 1138; *see also Shammas v. Lee*, 187 F. Supp. 3d 659 (E.D. Va. 2016), *aff'd without opinion*, 683 Fed. App'x. 195 (4th Cir. 2017); *Marshall v. Bd. of Ed., Bergenfield, N.J.,* 575 F.2d 417, 425 (3d Cir. 1978) (collecting cases holding that Rule 60(b)(5) does not apply to judgments for money damages). Of course,

"[v]irtually every court order causes at least some reverberations into the future," including a money judgment "most obviously until it is satisfied." *Twelve John Does*, 841 F.2d at 1138. Nevertheless, merely because "a court's action has continuing consequences . . . does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)." *Id.* Reviewing two Supreme Court decisions from which the "prospective application portion of Rule 60(b) was derived," *id.* at 1139 (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932), and *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421 (1856)), the D.C. Circuit concluded that an injunctive order did not implicate prospective application, citing as the key characteristics disqualifying prospective relief that the order (1) "did not compel" defendant "to perform[] any future act," and (2) did not "require the court to supervise any continuing interaction" between defendant and the other parties to the case, *id.*

Plaintiffs' money damages judgment in *Akins* does not satisfy the "prospective effect" requirement warranting relief under Rule 60(b)(5). The order directing Iran and the IRGC to pay plaintiffs' damages neither compels performance of a future act for the purposes of Rule 60(b)(5) nor requires ongoing court supervision. Plaintiffs implicitly acknowledge this fact and therefore turn to another source of relief for payment of the money judgement, asserting that Congress' 2019 extension of the USVSST program through 2039 creates a "'prospective' element to application of the judgment issued" in *Akins*. Pls.' Mot. at 4. This alternative source of relief still does not satisfy the requirements of Rule 60(b)(5). The USVSST program is administered by a special master appointed by the Attorney General and thus does not require "the *court* to supervise any continuing interaction" between the parties. *Twelve John Does*, 841 F.2d at 1139 (emphasis added); *see* ELSEA, *supra*, at 1.[5] Given that the judgment for damages here was based

---

[5]       Plaintiffs' original request for appointment of a special master to "hear evidence" and "determine damages," Pls.' Default Mem. at 15–16, also does not make any of the relief granted prospective in nature both

purely on past conduct and did not involve "supervision of changing conduct or conditions" or any "executory" elements, *Twelve John Does*, 841 F.2d at 1139, relief under Rule 60(b)(5) is not available to plaintiffs.

### B. Plaintiffs Are Not Entitled to Partial Relief Under Rule 60(b)(6)

Plaintiffs support their requested relief under Rule 60(b)(6) on grounds that they "seek nothing more than equitable treatment," as they suffered "substantially identical injuries in the same terrorist attack" as plaintiffs in the subsequently decided cases of *Aceto*, *Schooley*, and *Christie*—in which plaintiffs in only one case (*Christie*) were awarded prejudgment interest and punitive damages, and plaintiffs in all three cases were awarded compensatory damages computed largely in reliance on VA disability ratings using the *Heiser* framework. Pls.' Mot. at 5. In plaintiffs' view, they "should not be treated differently" in terms of punitive damages, prejudgment interest and compensatory damages "merely because of the sequence of their cases." *Id*. While plaintiffs' desire for relief from judgment in order to increase their damages awards to align more closely in some respects with the awards granted to plaintiffs in other cases is understandable, they fail to make an adequate showing to disturb a final judgment under Rule 60(b)(6).

"Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," *Salazar*, 633 F.3d at 1116 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988)), which grounds include "excusable neglect, newly discovered evidence, and fraud," *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007). The Supreme Court has read

because this request was denied and the request envisioned no prospective, post-judgment role for the special master.

Rule 60(b)(6) to require a showing of "extraordinary circumstances" to warrant relief. *Liljeberg*, 486 U.S. at 863–64, 863 n.11. "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors . . . includ[ing], in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'" *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg*, 486 U.S. at 863–64).

Notwithstanding the apparent flexibility of these considerations, the "extraordinary circumstances" requirement creates a "very high bar" plaintiffs must overcome to obtain relief under Rule 60(b)(6). *Kramer*, 481 F.3d at 792. Indeed, "[a] more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5) . . . ." *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1140 (D.C. Cir. 1988). As the D.C. Circuit has "emphasized[,] Rule 60(b)(6) 'should be only sparingly used.'" *Salazar*, 633 F.3d at 1120 (quoting *Kramer*, 481 F.3d at 792 (quoting *Good Luck Nursing Home*, 636 F.2d at 577)).

As particularly relevant here, Rule 60(b)(6) "may [also] not 'be employed simply to rescue a litigant from strategic choices that later turn out to be improvident.'" *Kramer*, 481 F.3d 788, 791 (D.C. Cir. 2007) (quoting *Good Luck Nursing Home*, 636 F.2d at 577). Put another way, "Rule 60(b)(6) relief is not a 'substitute for appeal.'" *Salazar*, 633 F.3d at 1121 (quoting *Polites v. United States*, 364 U.S. 426, 432 (1960)). In fact, "a party who has not pursued an appeal may obtain relief under Rule 60(b)(6) only if there are . . . 'circumstances . . . so extraordinary" that the "circumstances . . . essentially made the decision not to appeal an involuntary one." *Id.* (quoting *Twelve John Does*, 841 F.2d at 1141). To preserve the finality of judgments and ensure the regular procedural order of appellate review, sanctioning relief from a final judgment under Rule 60 after a failure to appeal is permitted only in very extreme

circumstances, such as "when a litigant suffered from a disabling illness, where participation in the litigation would cause greater disability, . . . where illness had depleted the litigant's financial resources," *id.* (citing *Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987)), or when "an attorney 'was grossly negligent,'" *Salazar*, 633 F.3d at 1121 (quoting *L.P. Steuart, Inc. v. Matthew*, 329 F.2d 234, 235–36 (D.C. Cir. 1964)).

Set against this exacting standard, plaintiffs are not able to show that "extraordinary circumstances," as required by Rule 60(b)(6), have arisen since 2018 that prevented plaintiffs from seeking an appeal of the relief granted or warrant nullifying the Court's prior decision regarding plaintiffs' original request for punitive damages, prejudgment interest, and the amount of the compensatory damages awards.

### 1. *Punitive Damages*

This Court denied plaintiffs' request for at least $500 million in punitive damages as barred by controlling precedent at the time that held "the FSIA terrorism exception [did] not retroactively authorize the imposition of punitive damages against a sovereign for conduct occurring before the passage of § 1605A." *Akins*, 332 F. Supp. 3d at 45 (quoting *Owens*, 864 F.3d at 812). In 2020, the Court's decision *Opati* invalidated the D.C. Circuit's *Owens* holding and authorized punitive damages under § 1605A for conduct that occurred prior to the 2008 amendment. *Opati*, 140 S. Ct. at 1609. Standing alone, the Supreme Court's conclusion in *Opati*—that plaintiffs suing under FSIA § 1605A(c) are permitted to seek punitive damages for terrorist attacks that occurred before the statute was enacted in 2008, *id.* at 1608—does not constitute an "extraordinary circumstance" warranting relief under Rule 60(b)(6).[6]

---

[6]  The Rule 60(b)(6) requirement that the motion for relief from judgment be made within a "reasonable time" is met here. This Circuit has "rejected 'an unduly strict' interpretation of the 'reasonable time requirement,'" *Salazar*, 633 F.3d at 1117–18 (citing *Associated Builders & Contractors v. Mich. Dep't of Labor and Economic Growth*, 543 F.3d 275, 279 (6th Cir. 2008)), and found an "abuse of discretion to rule that a Rule 60(b)(6) motion is

The "extraordinary circumstances" required to trigger relief from judgment under Rule 60(b)(6) are not present "when there has been an intervening change in case law." *Kramer*, 481 F.3d at 792 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 536–538 (2005) and *Agostini v. Felton*, 521 U.S. 203, 239 (1997)); *see Gonzalez*, 545 U.S. at 536–37 (concluding Supreme Court's changed interpretation of statute of limitations provided in Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which change occurred after petitioner's case was no longer pending, was not so extraordinary as to warrant relief under Rule 60(b)(6)); *see also Acree v. Republic of Iraq*, 2009 U.S. App. LEXIS 3281 (D.C. Cir. Feb. 17, 2009) (per curiam) (granting motion for summary affirmance by holding, in part, that appellants failed to show an "intervening change in the law is an extraordinary circumstance warranting relief under Rule 60(b)(6)").[7]

Binding precedent in this Circuit thus directs that plaintiffs cannot obtain relief for their punitive damages judgment under Rule 60(b)(6) because the change in law under *Opati* is not an extraordinary circumstance. While Rule 60(b)(6) relief has been granted when a change in decisional law is accompanied by other factors, the mere fact that the Supreme Court "arrived at a different interpretation" after plaintiffs' original judgment in *Akins* was rendered is "hardly extraordinary." *Gonazalez*, 545 U.S. at 536; *see id.* at 536–37 (finding that change in law

---

not filed within a reasonable time without finding that the movant's delay has prejudiced the non-moving party" in a "complex and long-running institutional reform case," *United States v. Philip Morris USA Inc.*, 840 F.3d 844, 850 (D.C. Cir. 2016) (quoting *Salazar*, 633 F.3d at 1119). Not only did plaintiffs filed their motion only eight months after binding D.C. Circuit precedent was reversed in *Opati* on May 18, 2020, *Opati*, 140 S. Ct. at 1601; Pls.' Mot. at 1, but also, given defendants' non-appearance in this lawsuit, any delay has resulted in no prejudice.

[7] The Supreme Court has suggested that "[a] change in the interpretation of a substantive statute may have consequences for cases that have already reached final judgment," *Gonzalez*, 545 U.S. at 536 n.9; *see also Crutsinger v. Davis*, 140 S. Ct. 2, 3 (2019) (Sotomayor, J., concurring in denial of certiorari) ("[I]n an appropriate case, a change in decisional law, alone, may supply an extraordinary circumstance justifying Rule 60(b)(6) relief," citing exclusively habeas cases), but this possibility has only been raised "in the criminal context" where habeas relief is at issue, *Gonzalez*, 545 U.S. at 536 n.9 (citing two habeas cases, *Bousley v. United States*, 523 U.S. 614 (1998), and *Fiore v. White*, 531 U.S. 225 (2001)); *Crutsinger*, 140 S. Ct. at 3. The possible exception signaled in recent Supreme Court *dicta* thus appears cabined to the habeas context.

regarding the tolling of the habeas limitations period did not constitute an "extraordinary circumstance" justifying relief from an earlier judgment based on prior law).

Moreover, plaintiffs' lack of diligence in pursuing review or appeal of the *Akins* judgment makes "the change in the law . . . all the less extraordinary," *id.*, and confirms the unavailability of Rule 60(b)(6) relief. As discussed above, "Rule 60(b)(6) relief is not a 'substitute for appeal,'" *Salazar*, 633 F.3d at 1122 (quoting *Polites*, 364 U.S. at 432), and a party who has not pursued an appeal must demonstrate "'circumstances . . . so extraordinary" that the "circumstances . . . essentially made the decision not to appeal an involuntary one." *Id.* at 1121 (quoting *Twelve John Does*, 841 F.2d at 1141). Plaintiffs here have made no argument that extraordinary circumstances prevented them from seeking review. To the contrary, plaintiffs make no representation that they considered appeal at all, much less that extreme circumstances prevented an appeal. *See Salazar*, 633 F.3d at 1121 (collecting cases where Rule 60(b)(6) relief has been granted when, *inter alia*, "a litigant suffered from a disabling illness," or "an attorney was 'grossly negligent'" (citations omitted)). The *Opati* plaintiffs, who, like plaintiffs, were denied punitive damages, pursued an appeal to the Supreme Court to obtain the favorable ruling on which plaintiffs now want to rely, but plaintiffs here were equally capable of appealing this Court's judgment in 2018. Plaintiffs may not now disturb the finality of their earlier judgment to take advantage of new, more supportive and binding precedent when their decision not to appeal was "voluntary, deliberate, free, [and] untrammeled." *Ackermann v. United States*, 340 U.S. 193, 200 (1950); *see also Summer v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004) ("Under Rule 60(b), a court must balance the interest in justice with the interest in protecting the finality of judgments." (citations omitted)).

Plaintiffs contend that "equitable considerations require application" of the rule "allow[ing] punitive damages" because the rule has been adopted by "the Supreme Court and this [C]ourt." Pls.' Mot. at 11. While acknowledging that "some case law hold[s] that intervening changes in law do not ordinarily rise to the level that would justify application of Rule 60(b)," *id.* at 4 (citing *Kapar v. Islamic Republic of Iran*, 105 F. Supp. 3d 99, 104–05 (D.D.C. 2015)), plaintiffs urge that "their argument for exercise of this Court's equitable powers is stronger here" than in cases like *Kapar*, which hold "intervening changes in law do not ordinarily rise to the level that would justify application of Rule 60(b)," because plaintiffs in this action "suffered substantially identical injuries in the same terrorist attack as their brethren in . . . *Christie*," in which punitive damages were ultimately granted following appeal, while plaintiffs here "were denied punitive damages," *id.* at 4–5. In plaintiffs' view, this comparative procedural history entitles them to renew their request for punitive damages now because they "should not be treated differently merely because of the sequence of their cases." *Id.* at 5.

Plaintiffs' argument is unpersuasive for at least two reasons. First, courts may only exercise their equitable powers under Rule 60(b)(6) upon a showing of extraordinary circumstances, which showing is wholly lacking here. *Gonzalez*, 545 U.S. at 535 ("[O]ur cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment (citations omitted)); *Liljeberg*, 486 U.S. at 863 n.11 ("'extraordinary circumstances' are required to bring the motion within the 'other reason' language" of Rule 60(b)(6)); WRIGHT & MILLER, *supra*, § 2857 ("[Rule 60(b)(6)] requires[s] a very special showing . . . of exceptional or extraordinary circumstances . . . ."). Plaintiffs' new inequity claims do not overcome the absence of the kind of extraordinary circumstances required

by Rule 60(b)(6)—namely the kind of circumstances that bear on extreme injustice or functionally prevented plaintiffs from in pursuing relief.

Second, plaintiffs' passing attempt to distinguish *Kapar* is unsuccessful since that case plainly precludes a finding in plaintiffs' favor. In *Kapar*, the Court held that an intervening change in law did not warrant Rule 60(b)(6) relief to a victim of foreign state-sponsored terrorism, rejecting plaintiff's argument that such relief from judgment was warranted due to the ten-year delay in payment by defendants and the unavailability of relief under the statutory scheme and binding precedent. *Kapar*, 105 F. Supp. 3d at 107-08. In short, the *Kapar* court determined that inequities created by routine circumstances and a change in the governing law were not extraordinary circumstances. The same determination applies here, where plaintiffs' bid for relief from denial of their punitive damages request relies solely on the change in law under *Opati* and the fact that plaintiffs in *Christie* were awarded punitive damages in accordance with Supreme Court precedent at the time—two decidedly non-extraordinary circumstances.

In order to maintain "the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that judge be done in light of all the facts," the circumstances here require that the earlier determination regarding punitive damages remain undisturbed. *Twelve John Does*, 841 F.2d at 1138.

### 2. *Compensatory Damages and Prejudgment Interest*

Plaintiffs additionally cite higher compensatory damages awards in *Schooley*, *Aceto*, and *Christie* and the award of prejudgment interest to plaintiffs in *Christie* to argue that the compensatory damages awards of 22 plaintiffs should be reassessed and that prejudgment interest should be awarded to all plaintiffs. The differences between the determinations in *Schooley*, *Aceto* and *Christie* and the determination in *Akins*, however, do not overcome the demanding standards imposed by Rule 60(b)(6) and so do not warrant relief from judgment.

As to plaintiffs' bid for increased compensatory damages, fifteen service-member plaintiffs in *Akins* were awarded compensatory damages, *see Akins*, 332 F. Supp. 3d at 47, and fourteen of those plaintiffs now seek to have their awards recalculated based on the *Schooley* award rubric, Pls.' Mot. at 6–10; *see also* Errata to Motion for Relief Under Rule 60(b) and Mem. in Supp. ("Pls.' First Errata") at 1–2, ECF No. 43 (clarifying service-member plaintiff Sasser's VA disability rating); Errata to Motion for Relief Under Rule 60(b) and Mem. in Supp. ("Pls.' Second Errata") at 1–2, ECF No. 44 (clarifying service-member plaintiff Sills' VA disability rating). Of the fourteen service-member plaintiffs seeking recalculation, eight—Akins, Anthony, Gaydos, Leinenbach, Sasser, Sills, Winter, and Ziegler—provided their VA disability ratings in support of the motion for default judgment, while six—Hurst, Lawrence, MacKenzie, Remar, Spicer and Wade—relied solely on descriptions of their injuries. *See Akins*, 332 F. Supp. 3d at 13–15, 17–25, 25–29.[8] Plaintiffs argue that these fourteen "*Akins* claimants should have upward revisions in their awards," Pls.' Mot. at 6, and that their eight "family member[ plaintiffs] whose [solatium] awards were limited by the desire to keep them proportional to [the] more limited award[s]" should be "entitled to the full 'usual' awards" granted in *Schooley*, *Aceto*, and *Christie*, *id.* at 6–7, in light of the Court's reliance on the "objective" VA disability rating metric in *Schooley*, *Aceto*, and *Christie*. Plaintiffs make this argument because service-member plaintiffs in *Schooley*, *Aceto* and *Christie* were categorically awarded $7,000,000 each for VA disability ratings between 70% and 100%, $6,000,000 each for VA disability ratings between 40% and 60%, and $5,000,000 for VA disability ratings between

---

[8]     Plaintiffs posit that service-member plaintiff Spicer "had and still has a service-related disability rating of 50 percent, which would qualify for him for an <u>upward</u> departure to $6 million in compensatory damages," Pls.' Mot. at 7, but neither the evidence provided in *Akins* nor the evidence provided in support of the instant motion demonstrate that Spicer had a VA disability rating at the time *Akins* was decided, *see* Pls.' Damages Mot., Attach. 2, Decl. of Matthew G. Spicer ("Matthew Spicer Decl.") (Jun. 25, 2018), ECF No. 25-2 at 58; Pls.' Mot., Ex. C, Letter from Cheryl J. Rawls, Assistant Deputy Under Sec'y for Field Operations, Dep't of Veterans Affairs to Spicer (Jul. 28, 2020), ECF No. 42-1 at 8.

0% and 30%, *id.* at 6; *Schooley*, 2019 U.S. Dist. LEXIS 108011 at *303; *Aceto*, 2020 U.S. Dist. LEXIS 22084 at *58; *Christie*, 2020 U.S. Dist. LEXIS 116378 at *74. By contrast, in *Akins,* service-member plaintiffs were assessed on the "'uncontroverted factual allegations' in [their] affidavits," *Akins*, 332 F. Supp. 3d at 40 (quoting *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 386 (D.D.C. 2015)), without much reliance on VA disability ratings to help differentiate the significance of the injuries among plaintiffs or for particular plaintiffs—and plaintiffs made no argument to do so or to highlight differences in VA disability ratings. This contributed to service-member plaintiffs with disability ratings between 40% and 100% being awarded $5,000,000 each across the board, *id.* at 47, and service-member plaintiffs with no VA disability ratings being awarded anywhere from $1,500,000 to $5,000,000, *id.*, as opposed to the consistent $5,000,000 baseline applied in *Schooley*.[9]

The use of the VA disability rating rubric in *Schooley* and the adoption of that rubric in subsequent cases *Aceto* and *Christie* are not extraordinary circumstances but instead reflect a changed approach informed by the record before the Court in each case. Relying on plaintiffs' request that the Court consider "factors [such] as the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that [would] remain with the victim for the rest of [their] life," Pls.' Mem. in Support of Entry of Final Judgment Awarding Damages ("Pls' Final Judgment Mem.") at 3, ECF No. 25-1, *Akins* fashioned a rubric that reflected plaintiffs' own proposed rubric for determining damages, such that awards of $5,000,000 were granted to those with "severe instances of physical and psychological pain," *Akins*, 332 F. Supp. 3d at 40 (quoting *Kaplan*, 213 F. Supp. 3d at 35–36 (quoting *Valore*, 700 F.

---

[9]        In one exception, service-member plaintiff Winter had a 70% VA disability rating but was awarded only $2,500,000 because he suffered "severe emotional injury accompanied by relatively minor physical injuries," *Akins*, 332 F. Supp. 3d at 41 (quoting *Khaliq*, 33 F. Supp. 3d at 33).

Supp. 2d at 84)), $2,500,000 to those with "severe emotional injury accompanied by relatively minor physical injuries," *id.* at 41 (quoting *Khaliq*, 33 F. Supp. 3d at 33), and of $1,500,000 to those with "severe emotional injury" alone, *id.* at 41 (citing *Kaplan*, 213 F. Supp. 3d at 36 (quoting *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 49 (D.D.C. 2012))). Then, using plaintiffs' "conten[tions] in their 'uncontroverted . . . affidavits' that they experienced significant physical and psychological injuries as a result of the attack," *Akins*, 332 F. Supp. 3d at 40 (internal citation omitted), *Akins* applied this rubric to each of the fifteen service-member plaintiffs injured in the terrorist attack to determine awards equitable among the *Akins* plaintiffs, *id.* at 41. In *Schooley*, on the other hand, facing 101 service-member plaintiffs with unique affidavits extensively describing the harrowing and often gruesome experiences the service-member plaintiffs endured in the aftermath of the Khobar Towers attack, took a different approach in an effort to "ensure that individuals with similar injuries receive similar awards." *Schooley*, 2019 U.S. Dist. LEXIS 108011 at *302 (quoting *Khaliq*, 33 F. Supp. 3d at 33). *Schooley* applied the *Akins* rubric to fourteen service-member plaintiffs without VA disability ratings, *id.* at *305–06, but, recognizing that "awarding damages for pain and suffering is inherently difficult in any context" and that "mental and physical injuries [are] equally capable of causing disability, and therefore equally deserving of compensatory damages," *id.* at *302, relied on *Schooley* plaintiffs' submissions of their VA disability ratings—"a specialized agency's official determination regarding the extent of disabling injury sustained by service members in connection with military service," *id.* (citing Stacey D. Benfield Decl., Attach., Letter from VA Regional Office Director to Stacey D. Benfield (Feb. 22, 2018), *Schooley v. Islamic Republic of Iran*, Civil Action No. 17-1376 (BAH) (D.D.C. Dec. 28, 2018), ECF No. 35 at 21 and Mark E. Broda Decl., Attach., Letter from E. Lima, Veterans Service Center Manager, VA, to Mark E.

Broda (Dec. 6, 2021), *Schooley v. Islamic Republic of Iran*, Civil Action No. 17-1376 (BAH) (D.D.C. Dec. 28, 2018), ECF No. 37 at 38)—to create the VA disability rating rubric. Highlighting and relying heavily on VA disability ratings defers to the standardized metric assigned by an agency with the expertise and responsibility to evaluate and distinguish between service-member injuries, and thus VA disability ratings were used to calculate compensatory damages for the remaining 87 *Schooley* service-member plaintiffs. Indeed, *Schooley* concluded that relying on the VA disability rating is "preferable" to the *Akins* approach because the rating "includes both mental and physical injuries in a single number [and] facilitates an approach to awarding damages that is generally agnostic to the mental or physical nature of the injury and further provides a relatively objective measure of comparative injuries." *Id.*

"[I]t is hardly extraordinary that subsequently, after [plaintiffs'] case was no longer pending, this Court arrived at a different" method for determining damages for survivors of terrorist attacks, and so extraordinary circumstances are not present here. *Gonzalez*, 545 U.S. at 536. *Schooley* used the extant record before the Court to identify and apply a uniform approach to determining damages for a large group of service members with similarly devastating physical and psychological injuries. This same method may be (and has been) employed to assess damages in other FSIA terrorist attack cases where plaintiffs provide their VA disability ratings in support of a compensatory damages award. While plaintiffs are correct that if the *Schooley* rubric had been used to assess the damages of *Akins* service-member plaintiffs in the first instance, these plaintiffs and their family-member plaintiffs may have been awarded higher compensatory damages and solatium awards, respectively. The adoption of this rubric in three cases, *Schooley*, *Aceto*, and *Christie*, decided after *Akins* falls well short, however, of creating an extraordinary circumstance warranting the disruption of *Akins*' final judgment under Rule

60(b)(6). Plaintiffs' argument that the development of the *Schooley* rubric necessitates Rule 60(b)(6) relief is additionally undermined by the fact that this Court applied the *Heiser* framework plaintiffs themselves requested in their June 2018 motion for default judgment, which request made no mention of VA disability ratings whatsoever. Pls' Final Judgment Mem. at 3.

Moreover, since "a litigant's diligence in pursuing review of a decision, either through appeal or through Rule 60(b)(6) relief, is relevant in assessing whether extraordinary circumstances are present," *Salazar*, 633 F.3d at 1118 (citing *Gonzalez*, 545 U.S. at 537), plaintiffs' decision not to appeal, paired with plaintiffs' delay in seeking Rule 60(b)(6) review, further weakens plaintiffs' bid for relief. Plaintiffs' failure to appeal, alone, bars Rule 60(b)(6) relief because that relief would act as a "substitute for [an] appeal" that plaintiffs could have pursued but chose not to. *Salazar*, 633 F.3d at 1122 (quoting *Polites*, 364 U.S. at 432). Plaintiffs make no effort to show that their decision to forgo an appeal was informed by extenuating circumstances that functionally prevented appeal. *See, e.g.*, *Klapprott v. United States*, 335 U.S. 601, 613–14 (1949) (determining petitioner's failure to appeal was not neglectful and, thus, not a bar to an extraordinary circumstances finding, where petitioner could not defend himself in denaturalization proceedings when he was simultaneously held in jail, did not have funds to hire representation for the denaturalization proceedings, became ill while incarcerated, and was defending himself against "the gravest criminal charges"). Indeed, plaintiffs' decision not to appeal here appears to have been a "voluntary, deliberate, free, [and] untrammeled choice" that cannot be cured by Rule 60(b)(6) relief. *Ackermann*, 340 U.S. at 200.

Plaintiffs' failure to demonstrate extraordinary circumstances is compounded by plaintiffs' delay in attempting to obtain Rule 60(b)(6) review. *Schooley* was issued on June 27, 2019, *Aceto* was issued on February 7, 2020, and *Christie* was issued on July 2, 2020. Instead of

seeking review in 2019, after *Schooley* was issued, or in 2020, after *Christie* was issued, plaintiffs filed the instant motion on January 8, 2021, nearly two years after this Court first began assessing compensatory damages for plaintiffs injured by the Khobar Towers attack using a rubric guided heavily by VA disability ratings. *See* Pls.' Mot. Absent any explanation about plaintiffs' failure to appeal or their delay in seeking review, Rule 60(b)(6) relief is not warranted.[10]

Next, as to plaintiffs' renewed request for prejudgment interest, *Akins* originally held that the *Heiser* framework awards "represent the appropriate level of compensation, regardless of the timing of the attack," *Akins*, 332 F. Supp. 3d at 46 (quoting *Oveissi*, 768 F. Supp. 2d at 30 n.12), and that plaintiffs failed to provide "any reason why awards under [the *Heiser*] framework are insufficient to provide 'complete compensation,'" *id.* (quoting *West Virginia*, 479 U.S. at 310). Plaintiffs now argue that the grant in *Christie* of prejudgment interest "supersed[es] the [prior] holding [in *Akins*]" and demonstrates that "prejudgment interest is appropriate in the circumstances of this case." Pls.' Mot. at 2–3 (citing *Christie*, 2020 U.S. Dist. LEXIS 116378 at *62–63). According to plaintiffs, the same "'equitable principles' relied on by this Court in *Christie* require award of prejudgment interest calculated to at least the time of the original judgment entered in this case." *Id.* at 10.

For many of the same reasons that plaintiffs are not entitled to relief from their punitive damages awards, plaintiffs are likewise not entitled to Rule 60(b)(6) relief from the prior

---

[10]     Plaintiffs also argue that the six service-member plaintiffs who did not provide a VA disability rating in support of their original motion for default judgment should receive "upward revisions in their awards." Pls.' Mot. at 6. "[A] party that has stipulated to certain facts or has not presented known facts helpful to its cause when it had the chance cannot ordinarily avail itself on [R]ule 60(b) after an adverse judgment has been handed down." *Good Luck*, 636 F.2d at 577 (citations omitted). The VA disability ratings for these service-member plaintiffs, while perhaps not strictly "known" at the time *Akins* was decided, were discoverable, were not presented to this Court, and their presentation now, nearly three years later, implicates more than a "slight[] impinge[ment]" on the "interest that litigation must someday end" and does not show an extraordinary circumstance that warrants a disruption of the "sanctity of final judgments" under Rule 60(b)(6). *Id.*

judgment denying prejudgment interest. First, as discussed above, the "extraordinary circumstances" required by Rule 60(b)(6) "are not present . . . when there has been an intervening change in case law," *Kramer*, 481 F.3d at 792 (citing *Gonzalez*, 545 U.S. 536–38). Second, plaintiffs' lack of diligence in pursuing review or appeal of the *Akins* judgment further undermines plaintiffs' argument that "equitable principles" require the Court to undo a final judgment. *Gonzalez*, 545 U.S. at 536.

In addition, *Christie*'s determination to award prejudgment interest to the plaintiffs in that case does not reflect the current consensus that the *Heiser* framework awards "represent the appropriate level of compensation, regardless of the timing of the attack." *Akins*, 332 F. Supp. 3d at 46 (quoting *Oveissi*, 768 F. Supp. 2d at 30 n.12). Of the four FSIA cases arising from the Khobar Towers attack that have been resolved by this Court, *Christie* is the only case that awarded prejudgment interest. The *Christie* plaintiffs represented that "[c]ourts in this circuit have awarded prejudgment interest in cases where plaintiffs were delayed in recovering compensation for their injuries, specifically, where such 'injuries were the result of targeted attacks perpetrated by foreign defendants,'" Pls.' Mot. for Default J. as to Liab. and Damages and Entry of Final J. ("*Christie* Pls.' Mot.") at 26, *Christie v. Islamic Republic of Iran*, No. 19-cv-1289-BAH (D.D.C. Jan. 29, 2020), ECF No. 35-1 (quoting *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263 (D.D.C. 2008)), and further represented that the conclusion had been generally adopted that "prejudgment interest is appropriate in FSIA cases because '[d]enying prejudgment interest on these damages would allow defendants to profit from the use of the money [in the time between the attacks and the litigation,]'" *id.* at 26–27 (quoting *Estate of Doe*, 943 F. Supp. 2d at 184 n.1). Closer examination of these representations reveals that a *single* Judge on this Court is responsible for nearly every recent FSIA prejudgment interest

award.[11]  By contrast, the majority of Judges confronted with this issue have concluded—as this Court did in *Akins*—that "pain and suffering and solatium damages are both designed to be fully compensatory." *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 60 (D.D.C. 2020) (Contreras, J.) (quoting *Wyatt v. Syrian Arab Republic*, 908 F. Supp. 2d 216, 232 (D.D.C. 2012)).[12]  Thus, the overarching tide of persuasive precedent on this Court plainly weighs against awarding prejudgment interest, and is even less warranted now that punitive damages are permissible in § 1605A cases, as prejudgment interest "does not apply to punitive damages because 'prejudgment interest is an element of complete compensation' and punitive damages are non-compensatory." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 55 (D.D.C. 2016) (quoting *Pugh*, 530 F. Supp. 2d at 264)).  Thus, plaintiffs fail to show that the reasoning underlying their bid for prejudgment interest overcomes the "sanctity of final judgments" and must be dismissed. *Twelve John Does,* 841 F.2d at 1138.[13]

---

[11]    *See Ewan v. Islamic Republic of Iran*, 466 F. Supp. 3d 236, 250 (D.D.C. 2020) (Bates, J.); *Kinyua v. Republic of Sudan*, 466 F. Supp. 3d 1, 12 (D.D.C. 2020) (Bates, J.); *Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 64 (D.D.C. 2018) (Moss, J.); *Amduso v. Republic of Sudan*, 61 F. Supp. 3d 42, 53 (D.D.C. 2014) (Bates, J.); *Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144, 153 (D.D.C. 2014) (Bates, J.); *Wamai v. Republic of Sudan*, 60 F. Supp. 3d 84, 98 (D.D.C. 2014) (Bates, J.); *Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 82 (D.D.C. 2014) (Bates, J.); *Mwila v. Islamic Republic of Iran*, 33 F. Supp. 3d 36, 46 (D.D.C. 2014) (Bates, J.); *Khaliq*, 33 F. Supp. 3d at 34–35 (Bates, J.); *Estate of Doe*, 943 F. Supp. 2d at 184, 184 n.1 (Bates, J.); *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 24 (D.D.C. 2009) (Friedman, J.).

[12]    *See also Doe v. Democratic People's Republic of Korea Ministry of Foreign Affairs Jungsong-Dong*, No. 18-cv-252 (DLF), 2021 U.S. Dist. LEXIS 34111 at *26 (D.D.C. Feb. 24, 2021) (Friedrich, J.) (denying prejudgment interest because the award "in *today's dollars* fully compensates the crew members and their estates for their time spent in captivity"); *Bathiard v. Islamic Republic of Iran*, Case Nos. 16-cv-1549 (CRC) & 17-cv-2006 (CRC), 2020 U.S. Dist. LEXIS 72513 at *22–23 (D.D.C. Apr. 24 2020) (Cooper, J.); *Cohen v. Islamic Republic of Iran*, Civil Action No. 17-1214 (JEB), 2019 U.S. Dist. LEXIS 115278 at *30–31 (D.D.C. Jul. 11, 2019) (Boasberg, J.); *Maupin v. Syrian Arab Republic*, 405 F. Supp. 3d 79, 99 (D.D.C. 2019) (Spec. Master Report), *adopted by Maupin v. Syrian Arab Republic*, 405 F. Supp. 3d 75 (D.D.C. 2019) (Kollar-Kotelly, J.); *Roth v. Syrian Arab Republic*, Civil No. 1:14-cv-01946-RCL, 2018 U.S. Dist. LEXIS 168244 at *45 (D.D.C. Sept. 28, 2018) (Lamberth, J.); *Oveissi*, 768 F. Supp. 2d at 30 n.12 (Lamberth, J.).

[13]    Given that the awards of service-member plaintiffs will not be recalculated, the family-member plaintiffs, whose awards were calculated in proportion to the damages awards of their service-member plaintiff relatives and who seek recalculation of their awards here, have no basis upon which to have their damages awards adjusted. *See* Pls.' Mot. at 8–10.

## IV.     CONCLUSION

For the foregoing reasons, plaintiffs' motion for relief under Rule 60(b) denied.

Date: July 16, 2021

_____
BERYL A. HOWELL
Chief Judge