IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TODD AKINS, et al. | ) | |
| | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     v. | ) | Case No. 2017-cv-675 (BAH) |
| | ) | |
| THE ISLAMIC REPUBLIC OF IRAN | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| IRANIAN ISLAMIC REVOLUTIONARY GUARD | ) | |
|  CORPS, | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |

<u>CERTAIN PLAINTIFFS' MOTION FOR SUPPLEMENTAL DAMAGES</u>

Certain Plaintiffs in this case, as specified below, submit this Motion for Supplemental Damages on the basis that they have suffered additional damages since the Court entered its Judgment and Order in this case on September 10, 2018 (ECF #30). The United States Victims of State Sponsored Terrorism Fund (USVSST) expressly recognizes the possibility that claimants of the Fund may get awards of supplemental damages against state sponsors of terrorism and has recognized supplemental compensatory damages as being cognizable for its distribution calculations.

Supplemental damages are especially appropriate in cases where a plaintiff has suffered Post Traumatic Stress Disorder (PTSD) in the aftermath of a terrorist attack. Often the symptoms of a victim of such an attack worsen over time, and that worsening is reflected in increases in the victim's disability rating from the Veterans Administration. ("VA"). Many of the plaintiffs seeking supplemental damages here fit that category. Other plaintiffs have incurred

supplemental damages because they had not sought any disability rating at all at the time their claims were brought against defendants.  They hesitated to make disability claims because they were still actively employed in the military and feared the negative effect on their careers and job evaluations that a disability rating based on psychological factors could bring.  Another group of plaintiffs herein who are submitting this Motion are the family members of those whose servicemember loved one's awards were lower than they could or should have been, and therefore the Court constrained the damage awards to the family members to lower amounts in order to make sure that family members did not receive more than the servicemember himself. A final group of plaintiffs submitting this Motion are those whose supplemental damages occurred because the Court's rubric assigning damages to different levels of disability evolved after its decision in this case was issued, and that rubric would have allowed plaintiffs herein greater damages than they were awarded.

The following servicemember plaintiffs submit this Motion: Todd Akins, John Gaydos, Gregory Leinenbach, Jerry Sasser, Frank David Sills, Alan Wade, Eric Dale Ziegler, Kevin Hurst, Nicholas MacKenzie, Jason Porter Remar, Matthew G. Spicer, Tracy Winter, George C. Anthony, and Thomas Lawrence; and the following family members of some of the above also submit this Motion:  Cathy Eunha Kim Spicer Lindsy, Christian William Spicer, Christopher G. Spicer, Robyn Lawrence, Kimi Lawrence, Bruce Russell Lawrence, Andrea Jo Grimson, and Angela Rose.  Several other family members of  servicemember plaintiffs herein will be submitting similar motions in related cases, applicable to them, as further specified below.

<u>PROCEDURAL HISTORY</u>

This Court entered judgment awarding plaintiffs herein compensatory damages against Defendant Islamic Republic of Iran on September 10, 2018.  ECF # 30, attached as Exhibit A

hereto.  On January 8, 2021, many of the same plaintiffs herein sought to have the Court reconsider and amend its judgment to award them punitive damages, prejudgment interest, and higher compensatory  damages.  (ECF #42) The Court denied that motion on 7/16/2021, ECF # 45 and 46. The plaintiffs enumerated above seek only supplemental compensatory damages.

In a case decided after the Court decided this case, *Schooley v. Islamic Republic of Iran,* 2019 U.S. Dist. LEXIS 108011, 2019 WL 2717888 (D.D.C. 2019) (Howell, C.J.) this Court established a rubric based on the Veteran Administration's service-related disability rating to determine appropriate compensatory damage awards.  The Court established this "objective metric" — the VA disability rating — to "determin[e] the relative degree of injury suffered by each service-member plaintiff." *Schooley*, 2019 WL 2717888, at *74. That rating is the "agency's official determination regarding the extent of disabling injury sustained by service members in connection with military service." *Id*. (internal quotation marks omitted). As *Schooley* explained, "[t]he VA disability rating, which includes both mental and physical injuries in a single number, facilitates an approach to awarding damages that is generally agnostic to the mental or physical nature of the injury and further provides an effective way of comparing injuries to ensure that similar injuries yield similar awards." *Id*.

The Court continued, "[t]hus, service member plaintiffs rated by the VA up to 30% disabled receive a baseline award of $5,000,000; plaintiffs rated 40-60% disabled by the VA will receive an upward departure, for a total award of $6,000,000; and service-member plaintiffs rated 70-100% disabled by the VA will receive a further upward departure, for a total of $7,000,000. *Schooley*, 2019 WL 2717888, at *75.  The Court has followed the *Schooley* rubric in subsequent Khobar Towers cases.

<u>ARGUMENT</u>

I.    THE COURT SHOULD AWARD SUPPLEMENTAL DAMAGES TO MAKE
      PLAINTIFFS WHOLE.

This Court has the inherent power to award supplemental damages to plaintiffs here.

Motions for supplemental damages are most often made in patent cases after a jury has rendered

its verdict and before the court has entered judgment.  See *Hynix Semiconductor Inc. v. Rambus,

Inc.*, 609 F. Supp. 2d 951, 960-61 (N.D. Cal. 2009); see also *Stryker Corp. v. Davol, Inc*., 234

F.3d 1252, 1254 (Fed. Cir. 2000). However, there is also precedent for entering an award of

supplemental damages even after a judgment has been issued.  *Dow Chem. Co. v. Nova

Chems. Corp*., 803 F.3d 620, 627 (Fed. Cir. 2015); *In Re: Personal Web Technologies ,et

al. Patent Litigation*,  Case No. 18-md-02834-BLF (N.D. Cal. Mar. 13, 2019) at *23

(*citing Dow Chemical*, "claim preclusion did not apply from a previous judgment to a period

of supplemental damages").  Copy attached as Exhibit B.  The rationale for this possibility in the

patent context is that damages may be continuing even after the jury has entered a verdict, or

even after the court has entered a judgment.

These holdings illustrate the principle, widely acknowledged in the patent context, that it

would be unfair to the injured party not to allow him to be made whole where there is continuing

injury even after entry of judgment.  That rationale is analogous to the situation before the court

here.  Plaintiffs here had suffered a certain degree of injury as of the time the court determined

what compensatory damages to award them. However, they continued to suffer even worse

injuries from the original wrong as time went by, and their PTSD symptoms worsened.

Accordingly, the Court should allow them to be compensated for those continuing and worsening effects.[1]

Here, the statute enacted by Congress in 2008 that provided a substantive basis for a federal cause of action against state sponsors of terrorism expressly precluded res judicata from applying to many cases in the transition from one version of the state sponsor of terrorism exception to the FSIA to the other.  *See* Section 1083 of the 2008 National Defense Appropriations Act for Fiscal Year 2008 (2008 NDAA). Pub. L. No. 110-181, § 1083, 122 STAT. 3, 338-44.   Chief Judge Lamberth, in a comprehensive and well-considered opinion, upheld the constitutionality and applicability of that legislative waiver of res judicata.   *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31, at 86-88 (D.D.C. 2009).  Even if that statute and that decision are limited to the particular circumstances of the legislative transition from a Section 1605(a)(7) FSIA authorization for a waiver of immunity to a substantive federal Section 1605A cause of action, the intent and policy purposes supporting the legislative exception to res judicata principles there are equally applicable here. The underlying legislative policy of the 2008 change was to give victims of terrorism who had brought claims prior to 2008 another chance to litigate their claims under the more favorable statutory regime enacted in 2008.  The same underlying policy should favor allowing victims of terrorism to receive full compensation for the injuries they suffered.

II.    EQUITABLE CONSIDERATIONS SUPPORT ENTRY OF SUPPLEMENTAL DAMAGES.

This Court has held that the question of whether to award pre-judgment interest to plaintiffs in similar claims against state sponsors of terrorism "is a question that rests within the

---

[1] The "continuing wrong" exception to res judicata principles is well accepted.  E.g., *Legat v. Legat Architects*, No. 20 C 6830 (N.D. Ill. 2021)(copy attached as Exhibit C)

Court's discretion, subject to equitable considerations." *Mustard v. Islamic Republic of Iran*, No. 21-cv-163 (D.D.C. Feb 6, 2023)(BAH), Mem. Op. at 32, quoting *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44 at 58 (D.D.C.. 2012). The question of whether to award supplemental damages here is materially indistinguishable from the question of whether to award prejudgment interest and is similarly well within the Court's inherent authority "to exercise its discretion subject to equitable considerations."

Our servicemen and women put their own safety and their lives on the line for the safety and security of all of us. They do this willingly and unreservedly. All they ask in return is that they be treated fairly. Any hint that one servicemember may hold an invidious advantage over another—because of timing, because of unequal application of the law, or for any reason at all—undermines the principles that motivate servicemembers' devotion to service and country. Without going into specifics, it is clear that some servicemembers—including many who served at the Dhahran Air Force Base and were lodged at the Khobar Towers residential complex when it was attacked--have received awards far in excess of others who may have suffered the same or even greater injuries and disabilities. This is inequitable and undermines the principles motivating service in the military. This motion gives the Court a chance to level the playing field and restore fairness in accordance with equitable considerations.

III.    THE USVSST RECOGNIZES THE POSSIBILITY THAT SUPPLEMENTAL DAMAGES CAN ALTER THE AMOUNT A CLAIMANT RECEIVES IN ANY DISTRIBUTION.

Litigation brought by victims of state sponsored terrorism is subject to legislation enacted by Congress in 2015, the Justice for Victims of State Sponsored Terrorism Act, Pub. Law 114-113 (Dec. 18, 2015), 129 STAT. 2242. This Act has been amended several times since then, and is currently codified at 34 U.S.C. 20144 (2023).

Plaintiffs herein continue to search for ways to satisfy their judgment against Iran but rely principally and primarily on the distributions authorized by the USVSST to satisfy their judgments. The distributions they have qualified for have been the second, third and fourth round USVSST distributions. They remain eligible for future distributions throughout the projected life of the Fund, which under current law will sunset in 2039. The USVSST determines what each claimant receives in each distribution by reference to that claimant's compensatory damages. For example, if a claimant had a court judgment for $2.5 million dollars in compensatory damages against a state sponsor of terrorism, he or she received .4 percent of that amount in the fourth USVSST distribution made in early 2023. If he or she had $6 million in damages, he or she received .4 percent of $6 million.

In an announcement published on the USVSST website on April 30, 2024, The Special Master of the USVSST stated that new claims for USVSST distributions had to be submitted by July 1, 2024, to be considered for the planned Fifth Round distribution to be authorized by January 1, 2025. However, in a separate announcement on August 8, 2025, the Special Master announced that there would be a *separate deadline* for existing applicants to be considered for *supplemental damages*. Exhibit D hereto. Such applicants had to submit a Final Order awarding such supplemental damages from a court by a different later date-- Sept. 20, 2024. Accordingly, the Special Master is familiar with, and recognizes, Final Orders from a court awarding supplemental damages to claimants already before the USVSST.

### INDIVIDUAL PLAINTIFFS WHO MERIT SUPPLEMENTAL DAMAGES

#### Thomas Lawrence and Four Family Members

Thomas Lawrence was shaken out of bed by the truck bomb explosion and suffered extreme disorientation. He saw and tried to help many badly wounded comrades. He continued

to perform his duties at the Dharhan Air Base and at the damaged Khobar Towers attack site for three more months after the attack, worried all the time that another attack would come.  He suffered PTSD for many years afterwards. His symptoms included nightmares and flashbacks, anxiety, and being quick to anger.  Declaration of Thomas Lawrence, ECF #25-2 at 98-101 He submitted evidence of medical treatment for "Adjustment Disorder with Anxiety."  Id. at 103. He became a different person: "I am more difficult to get along with for my wife and family. After the attack I was no longer the optimistic, outgoing young man I was before."  Id. at 100. However, because of fear that any Disability Rating he might receive based on his PTSD might negatively impact his employment and job prospects, he did not at the time apply for any disability rating.  The Court awarded him compensatory damages of only $1.5 million, a substantial downward departure.

Mr. Lawrence had not applied for any disability rating at the time this case was submitted because of fear that any disability rating based on mental health issues might adversely affect his military career and prospects for advancement.  He now submits the attached detailed "impact statement" to the Court.  Exhibit E.  It describes how his life was irreversibly changed and adversely impacted by the attack at the Khobar Towers, and his dilemma about not previously seeking a disability rating.  Mr. Lawrence fervently hopes the Court will read it so as to better understand his situation.

After Mr. Lawrence applied for a disability rating, and after examination and review by the VA, he was rated as 50 percent disabled based on his PTSD.  Exhibit F attached hereto. Under the Court's now well-accepted rubric, he would be entitled to an award of $6 million in compensatory damages based on that disability rating.   He should therefore receive an award of $4.5 million in supplemental damages.  If the Court grants his Motion for Supplemental

Damages, his relatives are also entitled to supplemental damages because their awards were artificially constrained by his low award.    His wife Robyn Lawrence was limited to $1,200,000; she merits a total award of $4 million, or supplemental damages of $2.8 million.  His father and mother Bruce Russell Lawrence and Kimi Lawrence were limited to $750,000 each; they merit awards of $2.5 million each, or supplemental damages of $1,750,000 each.  His sister Andrea Jo Grimson was artificially limited to $375,000.  She merits a total award of  $1.25 million, or supplemental damages of  $875,000.  To summarize, Thomas Lawrence moves for entry of an order awarding him supplemental damages of $4.5 million; Robyn Lawrence moves for entry of Order awarding her supplemental damages of $2.8 million; Bruce Russell Lawrence and Kimi Lawrence move for entry of an order awarding them supplemental damages of $1,750,000 each; and Andrea Jo Grimson moves for entry of an order awarding her supplemental damages of $875,000.

Kevin Hurst and Two Family Members

This Court awarded Kevin Hurst $2.5 million in compensatory damages.  After the Court issued its decision, Mr. Hurst was re-evaluated by the VA and received a service-related disability rating of 80 percent.  See Exhibit G attached hereto. Under the Court's well accepted rubric, that level of disability entitles him to a compensatory award of $7 million.  He has two relatives whose awards were constrained by his $2.5 million award, his mother Cynthia Hurst and his late father, James Hurst (Estate of James Hurst).  They were plaintiffs in *Aceto v. Islamic Republic of Iran*, 2020 U.S. Dist. LEXIS 22084, 2020 WL 619925 (D.D.C. 2020) (Howell, C.J.), and a separate forthcoming Motion for Supplemental Damages will be made in that case on their behalf, which would entitle them to $2.5 million each in compensatory damages if Mr. Hurst's

motion herein is granted.  In this case, Mr. Hurst moves for entry of an order awarding him supplemental damages of $4.5 million.

Matt Spicer and Three Family Members

Plaintiff servicemember Matt Spicer was awarded $2.5 million in compensatory damages by this Court.  Mr. Spicer now has a service related disability rating of 70 percent, Exhibit H, which would entitle him to a compensatory award of $7 million.  His family members and former family members (i.e., his ex-wife,) also received awards constrained by his less than average award.  His ex-wife, Eunha Kim Spicer-Lindsy, was limited to an award of $2 million; his brother Christopher G. Spicer was limited to $625,000; and his son Christian William Spicer was limited to $750,000. If Matt Spicer's award is changed to $7 million, the proportional restrictions to his family members would be eliminated, and their awards should change to  $2.5 million for his ex-wife, Eunha Kim Spicer-Lindsy; an award of $1.25 million for his brother Christopher G. Spicer; and an award of $1.5 million for son Christian William Spicer. Accordingly, plaintiff Matt Spicer moves for entry of an order awarding him $4.5 million in supplemental damages; his ex-wife, Eunha Kim Spicer-Lindsy moves for supplemental damages of $500,000; his son Christian William Spicer moves for supplemental damages of $750,000; and his brother Christopher Spicer moves for supplemental damages of $625,000.

Jason Porter Remar

Plaintiff service member Jason Porter Remar was awarded $2.5 million in compensatory damages. He is rated as having a 50 percent service-related disability. Exhibit I. hereto. Under this Court's revised rubric, that would qualify him for an upward adjustment and an award of $6 million.  Accordingly, he moves for supplemental damages of $3.5 million.

<u>Tracy Matthew Winter and One Family Member</u>

Tracy Matthew Winter was awarded $2.5 million in compensatory damages. His mother Angela Rose was awarded a proportionally reduced $1.25 million in damages. Mr. Winter has a 70 percent service-related disability rating based on his PTSD. Exhibit J hereto. Under this Court's revised rubric, that would qualify him for an award of $7 million in compensatory damages. If his damages are increased, his mother Angela Rose would also qualify for the full parental award of $2.5 million. Accordingly, Mr. Winter moves for supplemental damages of $4.5 million, and Angela Rose moves for supplemental damages of $1.25 million.

<u>Nicholas MacKenzie and Two Family Members</u>

Plaintiff service member Nicholas MacKenzie was limited to an award of $2.5 million in compensatory damages. He has a service-related disability of 80 percent. Exhibit K hereto. Under the Court's revised rubric, he would qualify for an award of $7 million in compensatory damages and his compensatory award should be changed to that amount. In a related following case, *Blank v. Islamic Republic of Iran*, No. 19-cv-3645, 2021 WL 3021450 (D.D.C. July 17, 2021) (Howell, C.J.), Mr. MacKenzie's mother Judith Mackenzie was limited to $1,250,000 in compensatory damages and his brother David Mackenzie was limited to $625,000 in compensatory damages. A separate similar related motion asking for supplemental damages for them will be forthcoming in that case. In <u>this</u> case, plaintiff Nicholas MacKenzie moves for supplemental damages of $4.5 million.

<u>Frank Sills</u>

Plaintiff service member Frank Sills received an award of $5 million. At the time of the court judgment he was rated as 30 percent disabled as a result of his Khobar Towers exposure. Today he has a combined disability rating of 60 percent related to his physical and psychological

injuries suffered at the Khobar Towers attack. Exhibit L hereto. Under this Court's accepted rubric, that would qualify him for an upward adjustment from his award of $5 million to an award of $ 6 million. Accordingly, he moves for supplemental damages of $1 million.

<u>Jerry Sasser</u>

Plaintiff service member Jerry T. Sasser was awarded $5 million in compensatory damages. He is now rated as having a 100 percent service related disability. Exhibit M hereto. Accordingly, he should be awarded $7 million under the court's current rubric, and he moves for entry of supplemental damages of $2 million.

<u>John Gaydos</u>

Plaintiff Service member John Gaydos suffered severe physical and psychological injuries, and was awarded $5 million in compensatory damages by this Court. However, he is rated as having an 80 percent disability rating. Exhibit N. His 80 percent service disability rating qualifies him for an award of $7 million in compensatory damages under the Court's accepted rubric. He moves for entry of supplemental damages of $2 million.

<u>Todd Akins</u>

Plaintiff service Member Todd Akins was awarded $5 million in compensatory damages. Mr. Akins is rated having a 100 percent service related disability (Exhibit O hereto). Under this Court's revised rubric, he would merit an upward departure to $7 million. He moves for entry of supplemental damages of $2 million.

<u>Eric Ziegler</u>

Plaintiff service member Eric Ziegler was awarded $5 million in compensatory damages. He is rated as having a 100 percent service-related disability, Exhibit P hereto, which would

qualify him under the Court's revised rubric for an upward departure to $7 million. He moves for entry of supplemental damages of $ 2 million.

<u>George Anthony</u>

Plaintiff service member George Anthony was awarded $5 million in compensatory damages. He is rated as having an 80 percent service related disability, Exhibit Q  hereto, which would qualify him under the Court's revised rubric for an upward departure to $ 7 million. He moves for entry of supplemental damages of $2 million.

<u>Gregory Eric Leinenbach</u>

Plaintiff service member Greg Leinenbach was awarded $5 million in compensatory damages. He is rated as having an 80 percent service related disability, Exhibit R hereto, which would qualify him under the Court's revised rubric for an upward departure to $7 million.He moves for entry of supplemental damages of $2 million.

<u>Alan J. Wade</u>

Plaintiff service member Alan J. Wade was awarded $5 million in compensatory damages.  He is now rated as having a 100 percent service related disability, Exhibit S hereto, which would qualify him under the Court's revised rubric for an upward departure to $ 7 million. He moves for entry of supplemental damages of $2 million.


<u>CONCLUSION</u>

For all the reasons stated, the Court should grant the motion of the enumerated plaintiffs herein for entry of an order awarding them supplemental compensatory damages in the amounts specified.

Respectfully submitted,


/s/ Paul G. Gaston
Paul G. Gaston (DC Bar # 290833)
LAW OFFICES OF PAUL G. GASTON
1101 Connecticut Avenue, NW, Suite 450
Washington DC 20036
202-296-5856
*paul@gastonlawoffice.com*

*Attorney for Plaintiffs*